| 163 | 269 |
| 206 | ¹465 |
| 163 | 269 |
| 214 | ¹107 |

# Kaufhold *v.* Arnold et al., trading as Conestoga Cork Works, Appellant.

[Marked to be reported.]

*Negligence—Master and servant—Infant—Risk of employment.*

A servant or employee assumes the risk of all dangers in his employment, however they may arise, against which he may protect himself by the exercise of ordinary observation and care, and the employer is not responsible for those injuries to which the employee voluntarily subjects himself. This rule applies to infants under the age of fourteen years where the employer has not been guilty of negligence.

Plaintiff, a boy under twelve years of age, was employed in carrying waste material down an elevator. He was injured by standing on the automatic doors closing the elevator shaft, while the elevator was ascending from below him. He testified that he had been instructed by the foreman to go upon the doors when there was unusual delay to find out the cause of the delay, and that at the time of the accident he had done so. The foreman and three other of the defendant's employees testified that the boy had always been warned to keep away from the doors. *Held* that the only question for the jury was whether the evidence of the boy, or that of the defendant's witnesses was true; that the court should have charged the jury that if they believed from all the evidence that plaintiff in getting on the doors of the elevator acted in violation of his

instructions, and that his injury was caused by his so doing, the verdict should be for defendant.

It seems that in such a case defendants were not negligent even if they had omitted warning the boy to keep away from the doors.

Argued, May 18, 1894. . Appeal, No. 497, Jan. T., 1894, by defendants, from judgment of C. P. Lancaster Co., Jan. T., 1891, No. 59, on verdict for plaintiff, Harry A. Kaufhold, by his father and next friend, Andrew Kaufhold. . Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ.   Reversed.

Trespass for personal injuries.   Before LIVINGSTON, P. J.

At the trial, it appeared that plaintiff, Harry A. Kaufhold, a boy eleven years and nine months old, was injured on Aug. 29, 1890, while working in defendant's cork factory.   On the day of the accident, which was two months and six days after his employment, he was engaged in cleaning out what are called steam chests, or wooden boxes in which the cork wood is steamed and softened for cutting into corks.   The steaming and handling of the cork wood in these boxes causes a sediment to settle in the bottom of the boxes, rendering it necessary to clean them about once a month.   A month previous to the accident plaintiff had cleaned the boxes, about fifty in number, and had been instructed how to do it, the cleaning of these boxes being part of the duties of sweep boy.   He was instructed to fill his bucket with the sediment and go down the elevator when it came up, carry the sediment out through the cellar and empty it on the cinder pile, and come up again on the elevator when it came up, and fill his bucket again.

About three o'clock in the afternoon of the day of the accident, when he was about half or two thirds through with his work, he was seen standing on the automatic doors of the elevator at the blocking room on the second floor of the factory, with one foot on each door.   Just then the elevator came up, he took hold of the wire cable that lifts the cage, the arch over the beam of the elevator pushed the automatic doors up and open, he slipped down into the beam, his hand slid out to the guide rail, the door or pulleys caught the three fingers of his left hand, cut one entirely off and injured two others so that they were afterwards amputated.

Defendant offered to ask plaintiff : " Q. Was this elevator

dangerous ? " The purpose of the offer is to show there is no danger in it with proper use. Disallowed and defendant excepts. [1]

" Q. Did you at any time during your employment in that cork factory make any complaint of any dangerous position or work you were placed in, or work you had to do, by Mr. Rote ? " Objected to by plaintiff. Disallowed and defendant excepts. [2]

Other facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

" [The primary duty of all servants is obedience to the will of their master. And if, when in the discharge of that duty, a lad of eleven years old is injured through the negligence of the master to give proper instructions as to the employment and warn him of danger, even if the child had knowledge of danger, would not now in law raise a presumption of concurrent or contributory negligence and shield the employer. It is the tender age and incapacity of the infant which shields it from responsibility.] [3] . . . .

" [In the case of an infant eleven years of age there is no presumption of law that he understands the working of any kind of machinery, or how to perform any kind of manual labor ; the presumption is that he does not, and that he requires careful instruction. And it is negligence to put such a child to perform any service without giving him positive instruction how to perform the duties required of him in the performance of such service, and seeing that he understands such instruction and has the ability to follow it.] [4] . . . .

" The boy says he was employed there, and was told that when he went there with the dirt from the steam boxes that he should stand there until the elevator came up and go down with the boys. [If they did not come up, or were not coming up, he should shake the rod (you perhaps saw it when there), and if it did not come, then he should pull the cable, which would bring it up, and if it did not come then, or if he could not get it up in that way, he should get on the door, take his finger and lift the doors.] [11] . . . .

" [You have heard Mr. Rote, who was the boss who employed him, whose business it was to direct him. He says he did not give any such instructions, but, on the contrary, told him to

keep off the door.  He says he may have said if the eleva-
tor was not coming up when he got there with his bucket,
he should rattle this pipe, but he did not tell him to raise the
elevator itself, nor raise the doors—he told him to keep off the
doors.  You have heard what Ditzler says.  He told the boy
he should not get on the door, and Mr. Peters says he heard
Rote tell him he should not get on those doors ; it was danger-
ous.  Mr. Eckman says he warned him to keep off the elevator
when he first began to work, and showed him that the elevator
might come up and he might get hurt.  He promised to keep
off.  These, however, amount to but little, except the one
which I spoke of, the order given by Mr. Rote.  If you believe
Mr. Rote gave these orders and did not properly instruct the
boy, then that would be negligence on his part, such negligence
as would entitle the plaintiff to recover.] [10]   If you believe
he gave him the reverse order, told him to keep away, not to
get on the doors at all, then you will ascertain from the evi-
dence whether this boy, seeing as you have done, and hearing
the testimony in regard to his actions, and seeing the place
where the injury occurred ; you will then investigate and see
whether he had sufficient knowledge by reason of his ability,
age, experience, or his instructions, to obey these orders and to
avoid the danger.  If you do, then it would be such negligence
on his part as would prevent his recovery. . . . .

" [If you find the superintendent, Mr. Rote, did not properly
instruct the boy, did not properly specify to him what he was
to do, and the danger of doing anything that was dangerous,
then he would be guilty of negligence, and the verdict should
be for the plaintiff for such amount as you find from the evi-
dence he has really sustained.  Leave out everything connected
with the father, or any rights the father may have against
these parties for the loss of the wages of the boy from now un-
til twenty-one years of age.] " [12]

Defendants' points were among others as follows :

" 2. A servant or employee assumes the risk of all dangers
in his employment, however they may arise, against which he
may protect himself by the exercise of ordinary observation
and care, and the employer is not responsible for those injuries
to which the employee voluntarily subjects himself.  *Answer :*
Our answer to that is, that this is the law with reference to

adults, but in the case of an infant of eleven years old, the rule is different. A child of such age is not to be judged by the same rigid rule as an adult—he would not even be bound by any contract made between him and his employer—and unless the jury find from the whole evidence that the boy was properly instructed by the defendants of any danger at the place stated, and that by reason of his age, knowledge, intelligence and physical strength he had sufficient capacity, ability and understanding to fully appreciate and be fully sensible of any danger attaching to his employment and the power to avoid it, there can be no negligence imputed to him, contributory or otherwise, so as to prevent a recovery for injury if the defendants were negligent." [5]

" 4. If the jury believe from all the evidence in this case that the plaintiff was warned and instructed to keep away from or not to get on the door of the elevator, then there was no negligence on the part of the defendants as to the plaintiff's use of the elevator, and the verdict should be for the defendants. *Answer:* Our answer to that is: We affirm it, provided the jury find from all the evidence he had been given proper instructions by the defendants, and that the boy by reason of his age, knowledge, intelligence and physical strength, had sufficient capacity, ability and understanding to fully appreciate and be sensible of any danger attaching to his employment, and to have the power of avoiding it. The law will impute no negligence to him, will not charge him with contributory negligence otherwise." [6]

" 5. If the jury believe from all the evidence that the plaintiff, in getting on the door of the elevator, acted in violation of his instructions to keep away from the door of the elevator, and that his injury was caused by so doing, the verdict should be for the defendants. *Answer:* Our answer to that is: We affirm that, provided, as we said before, the jury find from the evidence that the boy was fully and properly instructed, and by reason of his age, intelligence, knowledge and physical strength and education, he had sufficient capacity, ability, knowledge and understanding to know and comprehend as well as appreciate such instruction and was instructed of the danger, and be sensible of any danger attaching to disobedience on his part—we affirm that point." [7]

" 6. If the jury believe from all the evidence in the case that the plaintiff, at the time he sustained the injuries complained. of, had sufficient intelligence and experience to understand the danger that he incurred in going upon the door of the elevator, he cannot recover in this case, and the verdict should be for the defendants. *Answer :* This we answer by saying, if he was properly instructed, and understood and appreciated the danger and had the power to avoid it ; if the jury then find also, and by reason of his age, intelligence, and physical strength and ability, he had sufficient capacity and understanding to fully appreciate and be sensible of such danger and have the power of avoiding it, that would be so." [8]

" 7. If the jury believe from all the evidence that the plaintiff was warned, notified and instructed to keep off the door of the elevator, then he cannot recover in this action. *Answer :* We affirm this, provided the jury find from the evidence that he was properly instructed and warned of the danger and appreciated it and had the power of avoiding it, and that by reason of his age, intelligence and physical strength he had sufficient capacity, ability, knowledge and understanding to fully appreciate all the dangers that might be connected with it, or was informed might be connected with it, and was sensible of the importance of such warning and instruction, and be fully able to appreciate any danger that might ensue from his disobedience and to have the power of avoiding it ; the point can be affirmed if the jury find these things." [9]

Verdict and judgment for plaintiff for $1,275.

*Errors assigned* were (1, 2) rulings ; (3–12) instructions ; quoting bills of exceptions and instructions.

*Hugh R. Fulton* and *Hugh M. North,* for appellants.—The elevator was not a dangerous machine, and the plaintiff was properly instructed as to its use : Zurn v. Tetlow, 134 Pa. 213 ; Strawbridge v. Bradford, 128 Pa. 200 ; Nagle v. R. R., 88 Pa. 35 ; R. R. v. Lewis, 79 Pa. 33 ; Gillen v. Rowley, 134 Pa. 209.

The servant or employee assumes the risk of all dangers, however they may arise, against which he may protect himself by the exercise of ordinary observation and care : R. R. v. Sentmeyer, 92 Pa. 276 ; Reese v. Clark, 146 Pa. 465 ; R. R.

v. Lyons, 119 Pa. 324; Titus v. R. R., 136 Pa. 618; Payne v. Reese, 100 Pa. 301; Wanamaker v. Burke, 17 W. N. 225; Tagg v. McGeorge, 155 Pa. 368; O'Keefe v. Thorn, 24 W. N. 379; s. c., 2 Mona. 73.

If the testimony upon one side of a controverted question of fact is made prominent and conspicuous in the charge to the jury, common fairness requires that equal prominence should be given to opposing testimony having a contrary tendency, and the giving of such undue prominence to one side of the case is ground for reversal: Reichenbach v. Ruddach, 127 Pa. 564; McTaggart v. Thompson, 14 Pa. 149; Penna. Canal Co. v. Harris, 101 Pa. 80.

The answers to defendants' second, fourth, fifth, sixth and seventh points were incomprehensible and no jury could draw any other conclusion from them than that the court desired them to give a verdict for plaintiff.

As defendant was not guilty of negligence there can be no recovery against him: R. R. v. Spearen, 47 Pa. 300; Kay v. R. R., 65 Pa. 269; Honor v. Albrighton, 93 Pa. 475; Waters v. Wing, 59 Pa. 211; Kehler v. Schwenk, 144 Pa. 348; Ford v. Anderson, 139 Pa. 261; Augerstein v. Jones, 139 Pa. 183; Baker v. R. R., 95 Pa. 211; Union News Co. v. McMellen, 144 Pa. 334; Ash v. Verlenden Bros., 154 Pa. 246; Nav. Co. v. Hayes, 128 Pa. 294.

The mere fact of injury raises no presumption of negligence: Melchert v. Brewing Co., 140 Pa. 448.

Instructions as to damages were inadequate: R. R. v. Zebe, 33 Pa. 318; R. R. v. Books, 57 Pa. 339; R. R. v. Adams, 89 Pa. 31; R. R. v. Ogier, 35 Pa. 60; R. R. v. Kelly, 31 Pa. 372; Collins v. Leafey, 124 Pa. 203; R. R. v. Frantz, 127 Pa. 297; McCloskey v. R. R., 156 Pa. 254.

*W. U. Hensel* and *George Nauman, J. Hay Brown* with them, for appellee.—Plaintiff being under twelve years of age, his employment was illegal: Act of June 1, 1887, P. L. 287.

It is culpable negligence to set a boy of even fourteen years of age upon a dangerous machine or in a dangerous place without pointing out its dangers: Sullivan v. Mfg. Co., 113 Mass. 399; Beach on Cont. Neg. 362; Trainor v. R. R., 137 Pa. 148; 1 Sh. & Red. Neg., 4th ed., p. 189; Ross v. Walker, 139

Pa. 48; Payne v. Reese, 100 Pa. 301; Fisher v. Canal Co., 153 Pa. 379; Lebbering v. Struthers, Wells & Co., 157 Pa. 315; Bennett v. Plate Glass Co., 158 Pa. 120; Bannon v. Lutz, 158 Pa. 166; Vanesse v. Coal Co., 159 Pa. 403.

In the present case, the boy was positively instructed to take a post of danger.

Where the measure of duty is ordinary and reasonable care, and the degree of care varies according to circumstances, the question of contributory negligence is necessarily for the jury : R. R. v. White, 88 Pa. 329; R. R. v. Werner, 89 Pa. 59; Ry. v. Henrice, 92 Pa. 431; Ry. v. Walling, 97 Pa. 55.

In cases of infants and children of tender years, if the evidence shows affirmatively the negligent conduct of defendant, it is for the jury to determine whether such negligence caused the accident: Summers v. Brewing Co., 143 Pa. 114; Ry. v. Steinhardt, 2 Penny. 358; Ry. v. Caldwell, 74 Pa. 421; Schnur v. Traction Co., 153 Pa. 29; Penna. Co. v. James, 81* Pa. 194.

The question of contributory negligence was fairly left by the court to the jury, notwithstanding a boy of tender years is held only to his own capacity to see and appreciate dangers; and while the question of his degree of such capacity is for the jury in the case of a boy under twelve, the burden of proving his capacity to appreciate such danger is on defendant: Rauch v. Lloyd & Hill, 31 Pa. 358 ; Oakland v. Fielding, 48 Pa. 320; Hydraulic Works v. Orr, 83 Pa. 332; Kehler v. Schwenk, 144 Pa. 348; Kehler v. Schwenk, 122 Pa. 76; Ry. v. Kelley, 102 Pa. 119; Ry. v. Caldwell, 74 Pa. 421; Company v. Hassard, 75 Pa. 367; Allison Co. v. McCormick, 118 Pa. 519; Gillen v. Rowley, 134 Pa. 209 ; Zurn v. Tetlow, 134 Pa. 215; Tagg v. McGeorge, 155 Pa. 368; Rummell v. Dilworth, 111 Pa. 343; Rummell v. Dilworth, 131 Pa. 519; 1 Sh. & Red. Neg.; par. 71 and 62; Smith v. O'Connor, 48 Pa. 221.

Contributory negligence is not imputed to children of tender years : Glassey v. R. R., 57 Pa. 174; Patterson v. R. R., 76 Pa. 393; Smith v. O'Connor, 48 Pa. 221 ; Ry. v. Caldwell, 74 Pa. 421 ; R. R. v. Long, 75 Pa. 257 ; Schnur v. Traction Co., 153 Pa. 30; Sanford v. Ry., 153 Pa. 302; Chilton v. Traction Co., 152 Pa. 425 ; P. R. R. Co. v. James and Wife, 81* Pa. 194 ; Kay v. R. R., 65 Pa. 277 ; R. R. v. Spearem, 47 Pa. 305 ; Barre v. Ry., 155 Pa. 173 ; Reinike v. Traction Co., 13 Pa. C. C.

R. 229 ;. R. R. v. Pearson, 72 Pa. 169; Ry. v. Steinhardt, 2
Penny. 358; Taylor v. Canal Co., 113 Pa. 162; Westerburg
v. R. R., 142 Pa. 473; Hydraulic Works v. Orr, 83 Pa. 332;
Summers v. Brewing Co., 143 Pa. 114.

Where a person is put in certain peril by the negligence of
another, and to escape one danger incurs another, he is not
guilty of contributory negligence: Vallo v. Express Co., 147
Pa. 404; Sekerak v. Jutte, 153 Pa. 117; Ry. v. O'Donnell,
58 Texas, 44; McCloskey v. R. R., 156 Pa. 258; Com. v.
Nicely, 130 Pa. 261; Kay v. R. R., 65 Pa. 270.

OPINION BY MR. JUSTICE GREEN, July 12, 1894:

When the plaintiff received his injury his employment was
simply that of cleaning some wooden boxes of sediment which
had gathered in them, and emptying the contents on a cinder
pile.    He carried the sediment in buckets to an elevator on the
same floor, and thence descended by the elevator to the cellar
where he emptied the buckets on the cinder pile.    He was not
engaged in the working or handling of any machinery, and he
therefore did not require any instructions for that class of work.
He was originally engaged as a sweeper, afterwards at cutting
corks in the blocking room, and incidentally at cleaning the
steam boxes of sediment.    It was in this last work that the
plaintiff was injured.    He testified that he received instruc-
tions as to the work and how to use the elevator for the purpose
of carrying the sediment of the steam boxes to the cellar.    He
described the manner of his injury by saying that he went to
the elevator and rattled the rod and pulled the elevator up but
some one below pulled it back again.    This was done a second
time.    Then he said: " The next time I rattled they answered
and I got on the doors and wanted to see who was using it.
Just as I was on the doors the elevator started to come up: I
was just stooping to open the door when the elevator raised up.
I had one foot on each door.    Then I grabbed a-hold of the rope
and slid down on the elevator on to this iron arch that opens
the doors.    My left hand slid right down that way and went
into the little pulleys that keep it straight; and I hollered and
Mr. Compton came over and stopped the elevator and left it
run down and my hand came out and I got off at the blocking
room floor. . . . The rope was right at my hands as the elevator

came up and I grabbed just a-hold of the rope till my feet got off the elevator doors. I left myself slide down on to the elevator on that iron arch though I got on that cross beam with my feet. My hand slid down the iron arch and was crushed."

It will be seen that the injury was the result of the manner in which he attempted to use the elevator. The open space in the floor through which the elevator ascended was closed by two movable doors on a level with the floor, and these doors were raised by the elevator as it ascended, and were closed as it descended. He had cleaned the steam boxes about a month before and testified that he then descended and ascended the elevator about fifty or sixty times. On the day of the injury he had done the same thing about twenty-five times before the accident occurred. On cross-examination he was asked : " Q. Did you understand the operations of the elevator, how it should be worked ? A. Yes, sir. Q. Had you ever been on any other elevator ? A. No, sir. Q. This elevator was in constant use, was it, every day ? A. Yes, sir. Q. People going up and down all the time ? A. The elevator boys bringing cork wood up every day."

Having seen so much of the working of the elevator, and having used it so much himself, and understanding, as he said he did, the operations of the elevator, it is difficult to understand how it can be said that he was insufficiently informed as to its use. And in reality that contention is not made, for in another part of his testimony he said he was fully instructed as to the use of the elevator. He was asked : " Q. Please state everything he (Mr. Rote) said to you about how you were to use the elevator, and what he said to you about it, or any danger connected with it, or anything else ? A. He told me that whenever I wanted to use the elevator, and it was not on that floor, I should rattle the rod. If nobody is using it they won't answer. If they did not answer I should just pull it up. If they answered I should wait till they were through, and they would let me know by knocking on the rod when they were through. That day they were using it down below and did not answer and I pulled it up."

It is perfectly plain that if he had not stood astride the doors, with one foot on each, the accident could not have happened. Knowing well that the elevator was likely to come up at any moment his position on both doors was an act of negligence

which, if he had been an adult, would have debarred him from any recovery. Being less than fourteen years of age he is not chargeable with contributory negligence.

But even with children of tender years there can be no recovery except upon proof of negligence on the part of the defendant. In this case there was no proof of negligence in any of the structures, appliances or devices which were used by the plaintiff. There was also no proof that he was required to work with hazardous machinery as to which he was not instructed. In point of fact he did no work with any such machinery.

The only manner in which it was sought to make out a charge of negligence was by an allegation that Rote, the foreman, had told him that in a certain contingency he should get on the door and open it, and that it was while he was doing this that he was injured. This is the way in which he states it. He was asked by his counsel: " Q. What about opening the door? A. If they would answer, he told me to get on the door to find out who was using it, and what they were doing with it so long. Q. What did he say to you about opening the door? A. We should open it if nobody answered on the rod; if we pulled it up and they pulled it down again, we should get on the door and find out what they were using it for. Q. What about opening the door? A. Get on it or reach around the other way; if we could not we would have to get on and open it."

On this subject there was no other testimony than that of the plaintiff. He was entirely uncorroborated and unsupported by the testimony of any other witness. But this was not all; he was positively contradicted by the testimony of Rote, who testified not only that he never gave him any such directions, but that on the contrary he gave him most positive instructions to keep away from the elevator doors at all times. He said he instructed him as follows: " Keep on the floor, off the elevator doors, and stay away from the elevator entirely, unless he was ordered to go there by me. . . . Q. You instructed him to go to the elevator? A. Go to the elevator and wait on the wood boys till they came up. When they came up and was ready to go down he was to go down with them on the elevator and empty his bucket and come up with them again when

they came up. . . . Q. What instructions if any in regard to
being careful on the elevator? A. Keep away from the doors
at all times.   When you get on the elevator, get on the plat-
form properly; get in on the platform far enough that the floor
cannot catch you.   That is all the danger there is around an
elevator that I know of."

In addition to the foregoing the plaintiff was contradicted
by Lemuel Peters, who, after saying that he had heard Rote
tell the plaintiff he should not get on the doors, being asked
to repeat the words, said : " He said, don't get on those doors.
You don't need to sweep on there at all.   Dangerous if you
get on there."

Another witness, Edward Ditzler, testified that he told the
plaintiff once he should not get on the elevator doors, and it
was before the accident.   Benjamin Eckman, after saying that
he had warned the plaintiff not to go on the doors, was asked :
" Q. Tell us what you told him when you say you warned him.
A. I says, I just called him aside and told him he should not
dare to go on the door, and says, if the elevator came up he
might get hurt.   Q. What answer did he make?   A. He told
me he would not."

All of this testimony was in contradiction of the testimony
of the plaintiff, and if it was believed the boy had no case and
the jury should have been instructed in that event to return a
verdict for the defendant.   The boy was, of course, deeply in-
terested in the event of the case, and all of these opposing wit-
nesses were entirely disinterested, and the real issue before the
jury was the truthfulness of the boy's testimony.   This much
has been rendered necessary in order that we may consider in-
telligently the answers to the defendant's points.

The second point of the defendant was in these words : " A
servant or employee assumes the risk of all dangers in his em-
ployment, however they may arise, against which he may pro-
tect himself by the exercise of ordinary observation and care,
and the employer is not responsible for those injuries to which
the employee voluntarily subjects himself."

To this the learned court below made a long answer admit-
ting that it was true as to adults but not as to persons of tender
years, and then was added a long comment to the effect that a
child is not to be judged by the same rule as an adult, that he

would not even be bound by the terms of any contract made between him and his employer, and that unless the jury found from the whole evidence that he was properly instructed as to danger, " and that by reason of his age, knowledge, intelligence and physical strength, he had sufficient capacity, ability and understanding, to fully appreciate and be fully sensible of any danger attaching to his employment and the power to avoid it, there can be no negligence imputed to him contributory or otherwise so as to prevent a recovery for injury if the defendants were negligent." The whole of this answer was inappropriate to the point and was uncalled for by anything contained in it. No question of contributory negligence was raised by the point either as to boys or adults. No instruction upon that subject was requested. The point as stated was exactly true and should have been affirmed without qualification. Even as to boys " the employer is not responsible for those injuries to which the employee voluntarily subjects himself." There is a duty of instruction by the employer to young boys, as to hazards in the handling of, or working with dangerous machinery, but that subject was not embraced within any aspect of the point, and the statement of the rule in such cases, contained in the answer, is not sanctioned by any decision of this court or any other that we have been referred to.

Moreover, the subject of instruction as to danger in the use of machinery was not germane to the point or to the case. The boy was not required to use any machinery, dangerous or otherwise, in prosecuting his work of sweeping or of cleaning the boxes containing the sediment, and the rule was therefore inapplicable to the facts of the case. As to the elevator the boy not only admitted that he was fully instructed by Rote, but also that he understood its operations and had actually used it himself sixty or seventy times before the accident. The injury resulted entirely from a most negligent act of the boy in going upon the doors when he was momentarily expecting the elevator to ascend, and knew from frequent observation precisely what the elevator would do when it did ascend. While it is perfectly true that he could not be charged with the consequences of contributory negligence, it is equally true that the defendants would not be liable *because* of the boy's negligence. Nor would it be true that they would be liable

for a mere omission to give him a specific instruction that he must not stand astride the doors when he was endeavoring to have the elevator come up. As well might they be held culpably negligent for not warning him that he must not jump down the open hatchway when the elevator was not there.

There is but a single feature in the case which could possibly carry it to the jury, and that is whether the boy told the truth when he said that Rote told him he should stand on the door and open it, or try to open it, in order to find out who was using it. Even as to that his testimony was self-contradictory. He first says, " *If they would answer,* he told us to get on the doors to find out who was using it," and in the very next sentence he testified that Rote said, " We should open if *nobody answered* on the rod; if we pulled it up and they pulled it down again we should get on the door and find out what they were using it for." It is a most improbable statement at the best, and as it was most positively contradicted by Rote, and as he was flatly contradicted as to this very subject by three other disinterested witnesses, the only question in the case was whether he was to be believed. Upon that subject the jury should have been most carefully instructed, as in all similar cases. They should have been told that the only evidence in support of the allegation was the greatly interested testimony of the plaintiff himself, entirely uncorroborated and unsupported by any other testimony, while on the other hand he was flatly and positively contradicted by the evidence of four disinterested and unimpeached witnesses. Instead of repeating to the jury several times over, in the general charge and in the answers to the several points of the defendant, the rule as to the duty of instruction in regard to the using of dangerous machinery, and in the most extreme and exacting terms, a rule which had no application in the facts of this case, the jury should have been told that the only question for them was whether the story told by the boy as to the instructions to go on the doors given him, as he said, by Rote, was true, and that if they believed the four disinterested witnesses there could be no recovery.

These remarks are all applicable to the answers made by the court to the fourth, fifth, sixth and seventh points of the defendant, only in a much stronger degree. This is especially

the case with the fifth and seventh points. The fifth was: "If the jury believe from all the evidence that the plaintiff in getting on the door of the elevator, acted in violation of his instructions to keep away from the door of the elevator and that his injury was caused by his so doing, the verdict should be for the defendant." Of course this was exactly true and should have been affirmed just as it stood. For if the boy had received such instructions the defendants had performed their duty in that regard and were not negligent, and in that event there could be no recovery. Yet the court answered by repeating the same rule of duty as to instruction which they gave in answer to the second point. In the strictest technicality this answer could not be true because if the defendants warned him that he must not go on the doors, they did sufficiently instruct him as to the very danger which caused his injury. For the reasons stated, we sustain the fifth, sixth, seventh, eighth and ninth assignments of error. We sustain the tenth because that part of the charge belittled the effect of the contradictory evidence, which we regard as of the greatest importance in the case, and also because it takes away all the effect of the orders given by Rote to the boy by saying that, even if the jury believed that the orders were given, yet if he did not properly instruct the boy, there would be such negligence as would entitle the plaintiff to recover. We cannot possibly assent to such a proposition for the reasons already stated.

The charge on the subject of damages was exceedingly meagre, yet we cannot say it was error. The other assignments we do not think material and they are not sustained.

Judgment reversed and new venire awarded.