## Baldwin, Appellant, v. Urner.

*Negligence—Master and servant—Elevator.*

An employer is not held up to the very highest standard of care ; only to reasonable care in view of the circumstance.

In an action to recover damages for injuries to a boy eighteen years old, it appeared that the plaintiff was employed by defendant to work at some knitting machines in a room through the floor of which an elevator passed. When the elevator was lifted to the floor two doors opened automatically and rested against upright posts, one on each side of the elevator shaft. When the cage descended the automatic doors closed, and formed part of the floor. One of the upright posts was next to the wall of the building,

and the space between the elevator shaft and this wall was about twenty inches. A box containing tags stood in the corner of the room behind the elevator doors. Some boxes stood in the twenty inch space, not obstructing it entirely, they were placed there by fellow workmen of the plaintiff. At a time when the automatic doors were down, plaintiff walked over them, took some tags from the box, and as he turned to go back the doors rose, and his leg was caught between the door and the post. It was part of plaintiff's work to supply himself with tags from the box, and he well knew the doors and of their method of action. Instead of going over the closed doors he could have gone along an aisle into which the twenty inch passage opened, and have got to the tag box by pulling the other boxes out into the aisle. Plaintiff had worked in the room where he was injured for about three months at different times. *Held*, that there was no error in entering a compulsory nonsuit.

Argued Feb. 3, 1903. Appeal, No. 359, Jan. T., 1902, by plaintiff, from order of C. P. Montgomery Co., March T., 1901, No. 9, refusing to take off nonsuit in case of Harry M. Baldwin by his father and next friend, William H. Baldwin, v. W. C. Urner, trading as W. C. Urner & Company. Before Mitchell, Dean, Brown, Mestrezat and Potter, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before Swartz, P. J.

The circumstances of the accident are fully stated in the opinion of the Supreme Court.

The locality of the accident is indicated by the following plan:

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was in refusing to take off nonsuit.

*Henry Freedly*, with him *E. L. Hallam*, for appellant, cited: Patterson v. R. R. Co., 76 Pa. 389 ; Bennett v. Glass Co., 158 Pa. 120 ; Brislin v. Coal Co., 20 Pa. Superior Ct. 234 ; Kehler v. Schwenk, 144 Pa. 348 ; Rummell v. Dilworth, 111 Pa. 343.

*Louis M. Childs*, for appellee, cited: Payne v. Reese, 100 Pa. 301 ; Ship Building Works v. Nuttal, 119 Pa. 149 ; Ford v. Anderson, 139 Pa. 261 ; Fick v. Jackson, 3 Pa. Superior Ct. 378 ; Coal Co. v. Hayes, 128 Pa. 294 ; O'Keefe v. Thorn, 24 W. N. C. 379 ; Kaufhold v. Arnold, 163 Pa. 269 ; Brossman v. R R. Co., 113 Pa. 490 ; Coal Co. v. McEnery, 91 Pa. 185 ; Wanamaker v. Burke, 111 Pa. 423 ; Boyd v. Harris, 176 Pa. 484 ; Nuss v. Rafsnyder, 178 Pa. 397 ; Wilkinson v. Mfg. Co., 198 Pa. 634 ; Knupp v. Rummel, 199 Pa. 90 ; Fick v. Jackson, 3 Pa. Superior Ct. 378 ; Kehler v. Schwenk, 144 Pa. 348 ; Nagle v. R. R. Co., 88 Pa. 35.

OPINION BY MR. JUSTICE DEAN, July 9, 1903 :

The plaintiff, a minor eighteen years of age, was employed by defendants in their machine knitting factory. He attended ten machines and had done so for about one month before February 12, 1901. Sometime before his last employment he had served in the same way at the same machines for two months but had been changed to other work in another part of the mill and after an interval of two or three months was changed back to the same ten machines. On the day mentioned plaintiff met with a serious accident and is probably permanently injured. The circumstances under which it occurred and those tending to produce it, are correctly stated from the testimony by the learned judge of the court below as follows :

" A freight elevator was located in a corner of the factory building. When the cage of the elevator was lifted to the third floor two doors opened automatically and rested against upright posts, one on each side of the elevator shaft. When

the cage descended the automatic doors closed and formed part of the room floor. One of the upright posts against which an open door rested was next to the wall of the building and the space between the elevator shaft and this wall was about twenty inches. The space between the shaft and the other corner wall was about twelve inches. A box containing tags stood in the corner of the room behind the elevator doors. The twelve inch passageway was boarded up and some boxes standing in the twenty inch space prevented access to the tag box by that passageway.

" The twenty inch passageway between the elevator and the wall fronted on an aisle six feet wide. The yarn boxes which obstructed the passageway between the elevator and the wall did not extend into the aisle nor did they fill all the space between the elevator and the wall. There was no difficulty in pulling them out into the aisle along the wall and thereby give a passageway to the tag box. This was what was actually done at the time the plaintiff's limb was caught between the door and the upright post. These boxes stood between the elevator and the wall for ' quite a while.' It is not shown that the defendant placed them or ordered them placed in the passageway to the tag box. The only evidence upon this point indicates that the boxes were put there by the fellow workmen of the plaintiff.

" On February 12, 1901, the plaintiff walked over the elevator doors, took some tags from the box and as he turned to go back to his machines the cage raised the doors and caught his leg. The leg was fastened between the opened door and the upright post. It was necessary that the knitters should supply themselves with tags from the box and they were in the habit of crossing the elevator doors to reach the tag box. It was the only open way so long as the yarn boxes remained in the twenty-inch passageway or so long as the tag box remained in the corner of the building behind the elevator."

The court below, being of opinion there was no sufficient evidence of negligence on part of defendants, directed a nonsuit which it afterwards refused to take off and we have this appeal by plaintiff.

Appellant in substance assigns three errors :

1. It is averred that the employers failed in duty towards

plaintiff, in that they did not provide a reasonably safe place for him to work.

2. While plaintiff was at work they subjected him to wholly unnecessary danger.

3. Plaintiff being a young person his employers did not instruct him as to the dangerous character of his employment and as to the means of avoiding danger.

As to the first complaint, we have most carefully perused the testimony and can find nothing to sustain it. The immediate cause of the injury was the operation of the freight elevator which was used to raise raw material from the ground to the third floor where the machines were placed and to lower from that floor the finished product. It was properly constructed and operated and could not answer its purpose without an exit from below in the floor; automatically when it approached the floor the doors which at other times formed part of the floor, raised up and closed down again when the elevator descended. Plaintiff in his testimony says: "I got my tags and was returning and got about the middle of the doors when they raised under my feet, . . . . the doors slid me up against the post on that side." Here was machinery operating exactly as it was intended to operate, and which was reasonably necessary to the successful carrying on of the factory; the floor was entirely safe except in that particular spot, that is, on the doors where plaintiff was standing, and even there, except for the very few minutes when the elevator was ascending to that floor. Outside of the doors there was a safe passageway at all times not interfered with by the elevator and doors. Taking into view the nature of the work being carried on, the necessity of an elevator, that plaintiff was employed on the third floor, we think the employers furnished plaintiff with a reasonably safe place to work. There is no factory operated by machinery and hands in which more or less risk is not run by the employees working in such factory. The risk is only minimized by the very utmost care; it is not abolished. But the employer is not held up to the very highest standard of care; only to reasonable care in view of the circumstances. The highest standard of care here would have been to get rid of the elevator altogether and carry the material up and down stairs. It is argued that the elevator might have been located at an

opening in another part of the floor less used by the employees; this is possible, but if a fact, it does not prove that in view of its intended purpose it was not rightly located in that building; its proper location must be determined by the reasonable judgment of the manufacturer; unless the evidence showed a reckless indifference to the safety of employees his judgment must be taken in preference to that of the jury who had no special knowledge on the subject. There was no evidence by manufacturers or experts that the location was unreasonably dangerous.

As to the second complaint, that appellant in his work was subject to wholly unnecessary danger, it appears from the evidence, that in carrying on his work appellant had to go across the floor from his machines to yarn and tag boxes and that when injured he was returning from the tag box across the elevator doors to the machine with tags. Undoubtedly, there was more danger in stepping on the doors than on the floor outside; but appellant voluntarily stepped on the doors because that way was at the time most convenient to him; it is said the passageway at one side was obstructed by boxes; but the evidence is, that that place for the boxes was not designated by the employer; they were put there by employees, and could easily have been removed so as to leave the way open. No rule of law would impute this act of negligence by employees to their employer; he planned his place of work so as to leave an entirely safe passage; he planned the automatic doors so that there would be no dangerous opening at any time except when the elevator made its trip to the third floor; everything was done that reasonable prudence would dictate to lessen danger; the unnecessary danger was caused by the voluntary act of appellant in unnecessarily walking on the doors when there was an entirely safe way outside.

As to the third ground of complaint, that appellant being young was not properly instructed as to the danger of his employment, it will be noticed, appellant was not injured in the use of the knitting machines which he attended, therefore most of the authorities cited have no application. He was injured by the operation of outside independent machinery, an elevator operated by others: Kehler v. Schwenk 144 Pa. 348; Rummell v. Dilworth, 111 Pa. 343, and that line of cases aid us very

little in determining the application of the law to the facts before us. Plaintiff had worked at these same machines for two months, and then, after a short interval, for one month immediately before the accident. As is apparent from his own testimony, although a minor, he was bright and intelligent; he had seen the operation of this elevator, the raising and lowering of the doors many times; whatever danger there was, was just as obvious to him as to his employer or superintendent; a mere child would have understood that there was danger in being on those doors when the elevator was ascending; no possible instruction could have made that fact clearer to him than his own observation and experience had made it; it was not a latent danger of which he would not know unless informed; was not one which was only to be avoided by some special manipulation of machinery; the danger had only to be known to be avoided, as in O'Keefe v. Thorn, 24 W. N. C. 379, and Kaufhold v. Arnold, 163 Pa. 269. He knew when the doors were up it was dangerous to jump down the elevator shaft; he knew just as well that it was dangerous to be on the doors when the elevator was coming up. Therefore there was no duty on the part of the employer to give him instructions; certainly, not after his long observation had given him as full knowledge as possessed by his employer.

All the assignments of error are overruled and the judgment is affirmed.