## BUSH et al. v. HUNT.

(Circuit Court of Appeals, Third Circuit. November 13, 1913.)

No. 1,759.

1. NEGLIGENCE (§ 136*)—ACTIONS FOR NEGLIGENCE—QUESTIONS FOR JURY.

In actions for negligent injury the questions of the negligence of defendant and contributory negligence of plaintiff are ordinarily questions for the jury, and courts will not interfere to declare either the one or the other as matter of law, where there is no fixed standard by which the alleged negligence may be determined, or unless there is such an obvious disre-

gard of duty as amounts to misconduct. The question is always one for the jury when the measure of duty is ordinary and reasonable care.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

2. MASTER AND SERVANT (§ 289*)—ACTION FOR INJURY TO SERVANT—QUESTIONS FOR JURY—CONTRIBUTORY NEGLIGENCE.

The question whether a plaintiff, who was injured by falling down the shaft of a freight elevator in defendants' mill, where he was employed with another in moving material loaded on trucks from one floor to another by means of such elevator, the mechanism of which was out of repair, was chargeable with contributory negligence *held*, under the evidence, one to be measured by the standard of ordinary care, and therefore one for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.*]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action at law by Ernest C. Hunt against John S. Bush and Harry Terry, copartners trading as Bush & Terry. Judgment for plaintiff, and defendants bring error. Affirmed.

F. B. Bracken and W. W. Porter, both of Philadelphia, Pa. (Porter, Foulkrod & McCullagh, of Philadelphia, Pa., on the brief), for plaintiffs in error.

B. J. O'Connell, of Philadelphia, Pa., for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

GRAY, Circuit Judge. The defendant in error, hereinafter called the plaintiff, brought his action of trespass in the court below against the plaintiffs in error, hereinafter called the defendants, to recover for personal injuries received by plaintiff from a fall down an elevator shaft at defendants' factory while at work as an employé, alleging that said fall was occasioned by the negligence of the defendants.

The plaintiff had been employed by the defendants as a carpet passer for 3½ years at their mill, his duties being to get the work from the setting room on the third floor and take it to the weaving room on the fourth floor, on trucks wheeled into a freight elevator. The trucks used were five or six feet long, the same height, and about two feet wide. They rested on good-sized rollers or castors, and moved easily. When loaded with spools placed in racks, they weighed about 600 pounds. Two men handled a truck,—one in front to pull and the other in the rear to push it on and off the elevator at the different floors.

Defendants' elevator was in a shaft running from the basement to the fourth floor, with openings upon each floor. At each floor of the elevator shaft was an open wicket gate, sliding vertically in two grooves at each end, and was raised by the operator, on reaching the proper floor, by his hands, and when so raised rested on automatic catches which prevented the gate from coming down again while the elevator remained at that particular floor. The elevator was semi-

automatic and was operated by means of a controller rope and steel cables that ran from the lower floors up through the elevators and down again, about one foot apart. Between these cables was a hempen rope attached to a brake, used for the purpose of stopping the elevator at any exact spot, without the operator being required to make use of the steel cable controller. The gates at the several floors were raised with the aid of counterweights. When the elevator was moved from the floor a matter of a few inches, the clutches would automatically release the gate, which would then drop to the floor of its own weight and bar the entrance to the shaft.

There was also placed in the shaft at each floor, under the directions of the Bureau of Elevator Inspection, what was known as a floor lock, by means of which the cable operating the car was fastened, so that the car could not be moved by those on another floor without the knowledge and consent of the workmen on or about it. There was no regular operator, it being operated by those who used it from time to time, and it could be raised and lowered to a floor where it was required by any one reaching into the shaft and operating the controller cables. The floor lock of the third floor at and before the time of this accident was broken, and had been so for a year, necessitating the use of a makeshift devised by one of the employés. The makeshift was the taking the so-called hempen rope and tying it to the broken floor lock or wrapping it around one of the controller cables.

The plaintiff testified that about two weeks before the accident, he was riding up on the elevator with Mr. Bush, one of the defendants, and that the gate stuck in its elevated position on the third floor as they passed; that he called Mr. Bush's attention to it and said that some one would meet with a severe accident some day through the condition of those gates, and that Mr. Bush replied that he would have it attended to. Plaintiff testified that it never was attended to, to his knowledge, and there was direct evidence by one of the employés in the mill, whose duty it was to inspect the elevator when any such complaint was made, that nothing was done to rectify the sticking of the gate prior to the accident. Plaintiff also testified that, in the two weeks or more elapsing between his thus notifying one of the defendants and the accident, he knew the gate on the floor in question had stuck about three times, but he also testified that he used that elevator between those floors on an average of 7 or 8 times, or perhaps 12 times, a day for many weeks immediately preceding the accident. Mr. Bush, one of the defendants, denies this conversation with the plaintiff, but does not deny knowledge of the liability of the gate to stick, and of the fact that the automatic floor lock on the floor in question was broken and had been incapable of being used for a long time prior to the accident.

It was in testimony that, in moving trucks between the third and fourth floor, it was usual for two men to be employed, the one pulling and the other pushing, so that, in loading the elevator on the fourth floor to go to the third, the one who pulled would, when the elevator was loaded, have his back towards the rear thereof, and the one who pushed would be in the front of the elevator at the doorway, and he

was the one who, from his position near the cables, would naturally operate the elevator, as he usually did. Plaintiff also testified that, as the hempen rope for stopping the elevator was between the operating cables and near the hand of the one operating the elevator, he naturally applied the makeshift device of fastening the elevator with the hempen rope after the automatic floor lock had been broken.

There was little controversy as to what happened on the day of the accident in question. On the evening of March 15, 1912, it became necessary for the plaintiff, Hunt, and a fellow workman by the name of Grunsky, to take some trucks loaded with spools from the fourth to the third floor and bring back other trucks in their place. It was necessary, as usual, for two men to handle them, one pushing and the other pulling and guiding. The two men had made one trip and were on their second trip when the accident happened. On this second trip, Hunt pulled the truck on to the elevator on the fourth floor and Grunsky pushed it. This put the plaintiff at the back of the elevator and left Grunsky at the front, next to the cable which he operated, lowering the elevator to the third floor, where he stopped it and raised the gate. Grunsky then pulled the truck off the elevator, going backwards, with Hunt pushing. They placed the truck to one side of the elevator shaft, about seven or eight feet therefrom, on the third floor. Plaintiff then passed over from that side to the other side of the shaft, to bring back another truck which was about eight feet distant from the elevator. The plaintiff testified:

"In this case, we had a light truck to push off, which left the elevator in perfect condition to pull the other on. I looked to see that that was all right as I crossed from the left to the right to pull the truck in. When I got toward the elevator I looked over my shoulder to see if the gate was all right and I assumed the elevator was there."

He afterwards says that he was about a foot and a half away from the elevator when he looked over his shoulder. The gate was up. There is some confusion in his testimony as to whether he saw anything but the raised gate, which would indicate that the elevator was in proper position. For at one time he says that as he looked over his shoulder, the floor of the elevator had just gone up, but it was too late, with the loaded truck being pushed against him, to save himself from falling into the shaft.

It turned out afterwards that the foreman on the fourth floor, without notice to either of the workmen on the third floor, had reached out into the shaft and, by means of the cable, removed the elevator from the third floor, as Grunsky, the one who operated the elevator, had not, as it was the usual custom of the operator to do, secured the elevator at the third floor by means of the hempen rope. The removal of the elevator should have caused the gate to drop and thus have barred the entrance to the shaft, but, owing to the fact that the grooves or runways of the gate were worn, the gate stuck and did not descend.

The negligence attributed by the plaintiff to the defendants, as the cause of his injuries, was the defendants failing to provide a safely working gate and a proper floor lock,—that is, a safe working place; and that while they knew, or ought to have known, that both were

so defective as to make the elevator dangerous to those using it, the defendants made no endeavor to remedy such defects. This primary negligence of the defendants made possible the intervening negligence of the foreman on the fourth floor, in moving the elevator without notice to those using it on the third, and the negligence of the plaintiff's fellow workman in neglecting to fasten the elevator at the third floor with the hempen rope.

The Pennsylvania statute of June 10, 1907 (P. L. 523), provides that:

"The negligence of a fellow servant * * * shall not be a defense, where the injury was caused or contributed to by * * * any defect in the works, plant, or machinery, of which the employer could have had knowledge by the exercise of ordinary care."

Under the facts of this case, then, the defendants cannot avail themselves of the defense that the accident was attributable to the negligence of the plaintiff's two fellow servants.

Upon the facts of which the foregoing is a summary, the learned judge of the court below submitted the case to the jury with a charge that was not directly excepted to; the only exception disclosed by the record being to the refusal by the court to direct a verdict in favor of the defendants, under all the evidence in the case. The jury having found a verdict in favor of the plaintiff, the defendants sued out this writ of error to the judgment entered thereon. There are only two assignments of error; one founded upon the exception above referred to, and the other upon the refusal of defendants' motion to enter judgment non obstante veredicto upon the whole record. The latter assignment, for obvious reasons, is not pressed.

It must be admitted that, upon the evidence the question as to the negligence of the defendants was properly submitted to the jury, unless the undisputed facts in the case were such as to convince the court that the plaintiff was guilty of contributory negligence. Indeed, defendants' counsel in their brief state the only question involved, as follows:

"Under all the evidence, was the accident so plainly due to plaintiff's contributory negligence that the court below should have given binding instructions for defendants?"

We turn, therefore, to the evidence, so far as it touches upon this question. Defendants' argument is confined to the contention that plaintiff contributed to the accident by his negligence in two particulars:

"(a) In failure to approach the elevator shaft in such a way as to avoid falling in, he having knowledge that the elevator might be moved away, leaving the hatchway open, due to the alleged defect in the automatic drop gate; and

"(b) In failing to use the device available for holding the elevator at the floor in such a way as to prevent its being moved while he was engaged in loading the truck."

The salient features of the testimony, as to the conduct of the plaintiff from the time he removed from the elevator the truck brought down from the fourth floor, up to the time he met with the accident in attempting to load the other truck on the elevator, must be again referred to:

There was evidence tending to show that, on arriving at the third floor, the plaintiff, who was at the back of the truck, pushed while his fellow workman pulled the truck off the elevator to a distance of from seven to eight feet therefrom, and somewhat to the left. The plaintiff says:

"My actions in pushing the truck off the elevator, we pushed that away to the left, and as we pushed that truck to the left I looked at the elevator floor to see that it was level with the floor level, to bring the second truck on, I took hold of the truck to pull it in. I of course was walking backwards. When I got close to the elevator, my natural instinct, as always was the case, I looked to see if it was in position and the gate was there.

\*     \*     \*     .     \*     \*     \*     \*     \*     \*     \*

"The second time when I looked for that elevator, I was about a foot and a half away, as I looked over my shoulder that way [illustrating], and the gate was in position all right, and the elevator floor was just disappearing, but I was so close it was impossible to stop myself, owing to the momentum of the truck.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"When I looked the second time, understand distinctly, I looked and saw that elevator twice. The second time I looked for the purpose of seeing if it was right to pull the other truck on. Sometimes we had to work the elevator. If a heavy truck went off the elevator it kind of sprung, and the result was that we would have to go back and bring it level with the floor again. In this case we had a light truck to push off, which left the elevator in perfect condition to pull the other one on. I looked to see that that was all right, as I crossed from the left to the right to pull the truck in. When I got toward the elevator I looked over my shoulder to see if the gate was all right, and it was all right, and I assumed the elevator was there."

"Q. How far away was the end of the truck that you took hold of from the elevator shaft when you went to put it on? A. When we took hold of it? Q. Yes. A. About seven or eight feet. Q. You got hold of it with your hands and pulled it backwards? A. Pulled it backwards, yes, sir."

Upon this testimony, defendants mainly rely to justify their contention as to plaintiff being guilty of contributory negligence.

Premising that the plaintiff testified that the elevator gate was out of repair and that he had notified one of the defendants of that fact two weeks before the accident, and that he knew that the floor lock to hold the elevator in place had been broken, and that the hempen brake rope had been used as a makeshift to secure the elevator when brought to the floor level, the defendants' counsel contend that the conduct of the plaintiff, as described in his own testimony as above quoted, evidenced such reckless disregard of his own safety under the circumstances, as required the court below to instruct the jury, as a matter of law, that plaintiff was guilty of contributory negligence, and was therefore not entitled to recover for the negligence of the defendants.

[1] Questions as to the negligence of the defendants or contributory negligence of the plaintiff are ordinarily questions of fact for the determination of the jury. Courts will not interfere to declare either the one or the other as matter of law, where there is no fixed standard by which the alleged negligence may be determined, "unless there is such an obvious disregard of duty as amounts to negligence." The plaintiff, as properly said by the court below, was bound in this case to exercise that degree of care to protect himself from the dangers of the situation which an ordinarily prudent person would exer-

cise under the circumstances. But what an ordinarily prudent person would do under the circumstances, is not for the court, but for the jury, to say. The jury, not the court, stands in the place of the typical ordinarily prudent person, whose supposed conduct under the circumstances is the standard by which the negligence, whether of the plaintiff or defendant, is to be determined. The general rule in this respect is so well settled, that it is hardly necessary to cite authority in its support, but the principle upon which it is founded was so well stated by the Supreme Court of Pennsylvania, as long ago as 1871, in R. R. Co. v. McElwee, 67 Pa. 311, a case referred to by counsel for plaintiff, that we quote the following language therefrom:

"The law is well settled that what is and what is not negligence in a particular case is generally a question for the jury and not for the court. It is always a question for the jury when the measure of duty is ordinary and reasonable care. In such cases the standard of duty is not fixed but variable. Under some circumstances a higher degree of care is demanded than under others. And when the standard shifts with the circumstances of the case, it is in its very nature incapable of being determined as matter of law, and must be submitted to the jury to determine what it is, and whether it has been complied with. But when the standard is fixed, when the measure of duty is defined by law, and is the same under all circumstances, its omission is negligence, and may be so declared by the court. And so, when there is such an obvious disregard of duty and safety as amounts to misconduct, the court may declare it to be negligence as matter of law. But where the measure of duty is not unvarying, where a higher degree of care is demanded under some circumstances than under others; where both the duty and the extent of its performance are to be ascertained as facts, a jury alone can determine what is negligence, and whether it has been proved."

[2] We do not think that the above-quoted testimony of the plaintiff, upon which counsel for the defendants rely in support of their contention, would have justified the court below in declaring, as matter of law, that the plaintiff was guilty of contributory negligence. The evidence clearly shows that the plaintiff was in the zealous performance of his duty to his employer. There was apparently some mishap on the fourth floor requiring prompt action on the part of the plaintiff in moving these trucks between the floors. The gate, which occasionally stuck in its grooves and did not automatically drop when it should have done so, usually operated as it was intended to operate, the plaintiff testifying that during the two weeks intervening between his notice to the defendant and the happening of the accident, although he was using the elevator from 8 to 12 times every day, the gate had only stuck two or three times.

Plaintiff's testimony also tended to show that it was customary, in handling these trucks between the floors, for the one who remained at the front or door of the elevator after the truck was pushed in, to operate the same, and also, upon the arrival of the elevator at the floor to which it was destined, to secure it, in the absence of the floor lock, with the hempen brake rope. Grunsky recognized that this was his duty, when he said that when he raised the gate up, he thought they were to merely push the truck off and were not going to put another one on, and therefore did not use the precaution of fastening the rope, and, according to this testimony, it was his negligence that the hempen rope was not used to secure the elevator, and not that of the plaintiff.

The evidence also tends to show that plaintiff did not know that Grunsky had failed in the matter of using the hempen rope as a fastening, though he did not endeavor to ascertain whether this duty had been performed by Grunsky, or not. This being the testimony bearing on the plaintiff's state of mind and knowledge as to the situation immediately preceding the accident, we turn to the testimony as to the conduct of the plaintiff, upon which, by reason of the premises, the charge of contributory negligence on the part of the plaintiff is founded.

The evidence tends to show that, as plaintiff left the elevator, pushing the truck, he looked to see that it was flush with the floor and all right for bringing the other truck on. It also tends to show that, as plaintiff crossed from left to right, to bring the second truck on to the elevator, he was in a position to look directly into the door of the elevator; that he did so and saw that the gate was still up and the floor of the elevator in proper position. The evidence is sufficient to support the inference that, from the time he thus looked until he was within a foot and a half of the elevator, walking backwards and pulling the second truck, could only have been an interval of a few seconds, as it was only necessary for the second truck to be pulled and pushed over the intervening space of 7 or 8 feet to the elevator, or a distance of 5½ or 6½ feet to the point where he actually did look, though too late to save himself. There is also evidence tending to support the suggestion that, but for the momentum of the heavily laden truck, increased by the push of his fellow workman, he might even at that distance have recovered himself.

Are we to say, as a matter of law, that it was negligence not to have taken into account the momentum and push of the truck, or that it was reckless disregard of his own safety not to have looked over his shoulder when 2 or 3 feet distant, instead of 1½? The fact, if it be a fact (and the plaintiff's testimony tended to show it), that he looked as he crossed from one truck to the other, and found the situation all right for his work, might or might not in the opinion of a jury excuse the plaintiff from expecting a change in the short interval of time required, after he had looked, to pull the truck over the intervening space of 7 or 8 feet which separated it from the elevator. We cannot agree that what plaintiff did shows such an obvious disregard of duty and safety as amounts to misconduct, which the court may declare to be negligence as matter of law. "The duty and extent of its performance are to be ascertained as facts" by the jury.

It is unnecessary to prolong this discussion of the testimony, as it is apparent that, in order to have complied with the defendants' motion for peremptory instructions on account of contributory negligence, it would have been necessary for the court to have established in its own mind a standard by which to test the alleged negligence of the plaintiff. The real standard being what an ordinarily prudent man would have done under the circumstances, it could only be fixed by the jury, and the court properly submitted the fixing of that standard to its determination.

. The judgment of the court below is therefore affirmed.