## AMERICAN CAR &. FOUNDRY CO. v. DUKE.

(Circuit Court of Appeals, Third Circuit. November 12, 1914.)

No. 1848.

1. MASTER AND SERVANT (§ 233*)—ACTION FOR INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—CHOICE OF WAYS.

Plaintiff had worked in defendant's foundry for 11 years, when he was injured by falling into a pit, which was of the usual kind used in foundries, circular in shape, with an earth core in the center, on which was mounted a revolving crane. Plaintiff was familiar with the pit and the surrounding floor, which was of earth and uneven. There were two ways of passing to the core of the pit; one called the front way, and the other the back way. Plaintiff was directed by the foreman to wheel sand onto the core "by the back way, the same" as another employé did on the day before. To do this it was necessary to pass around one side of the pit. There was a tramway, with the rail within from six inches to two feet of the edge of the pit, and plaintiff wheeled his first load in that space, as he had seen the man do the day before, but in returning he went on the other side of the rail, where there was ample space. It was while he was wheeling his second load along the edge of the pit that he fell in. owing to the unevenness of the ground. There was nothing to prevent him from using the space on the other side of the rail, which was perfectly safe, except the slight inconvenience of crossing the rail with his barrow. Held, that the direction of the foreman could not be construed to require him to take the narrow and dangerous way, and that in doing so, when there was a safe way equally open and well known to him, he was chargeable with negligence as matter of law, which precluded his recovery.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 681, 684–686, 701–742; Dec. Dig. § 233.*]

2. NEGLIGENCE (§ 136*)—ACTIONS FOR NEGLIGENCE—WHEN QUESTION OF LAW.

Where the facts are such that from them all reasonable men would draw the same conclusion, and that upon the testimony no recovery can be had upon any view which can properly be taken of it, the question of negligence ceases to be one of fact for the jury, and becomes one of law for the court to determine.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the District Court of the United States for the Middle District of Pennsylvania; Chas. B. Witmer, Judge.

Action at law by William T. Duke against the American Car & Foundry Company. Judgment for plaintiff, and defendant brings error. Reversed.

Fred Ikeler, of Bloomsburg, Pa., for plaintiff in error.

Paul J. Sherwood, of Wilkes-Barre, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This action arose out of the relation which the parties bore to one another of master and servant, wherein the plaintiff below, hereinafter called the plaintiff, sought to recover from the defendant below, hereinafter called the defendant, damages for personal injuries caused by the negligence of the defendant. The particular negligence imputed to the defendant, and which is alleged to have occasioned the injuries of which the plaintiff complains, is: First, the failure of the master to supply its servant with a reasonably safe place in which to work; and, second, its failure to supply him with reasonably safe conditions under which to work.

[1] The facts relied upon for the deduction of the defendant's negligence, as first stated, are in the main undisputed, and with respect to them the question before this court on review is whether they constitute acts from which all reasonable men might draw the same conclusion, and therefore, whether the court below erred in declining to treat the question of negligence as a question of law and in refusing to withdraw the case from the jury.

William T. Duke, the plaintiff below, was employed by the American Car & Foundry Company, the defendant below and the plaintiff in error, as a general laborer in its pipe foundry in the borough of Berwick, Pa. Duke was a man 34 years of age, and, excepting for a short interval of a few months, had been engaged for about 11 years prior to the date of his injury in working in and about a pit in the defendant's foundry, into which he fell and was injured. By his own testimony he showed that he had had a large experience in and possessed a general knowledge of the various kinds of work performed in the foundry, as well as entire familiarity with the apparatus in connection with which his accident occurred.

The pipe foundry of the defendant company was equipped with a pit of a type and pattern usual in such foundries, the center or core of which was solid ground, surrounded by a ring or open pit circular in form. This open circle or pit proper was three or four feet wide and about twelve feet deep, the inner portion or core of which was of earth, and bore a relation to the circular pit somewhat similar to that of a hub of a wheel to its tire. Upon this solid center or core was constructed a revolving crane that handled everything connected with work in the pit, lowering and placing the flasks, molds, pipes, and all materials in connection with the work. The walls of the pit were of concrete, the upper portions of which consisted of or came in contact with the ordinary earth floor of the foundry, the surface of which

was irregular, after the fashion of earth floors in foundries. Excepting along a passageway distant from the point of accident, the pit was without guard rails or protection, and no contention is here made that the trial court was in error in ruling that the case is not within the protection of the Factory Act of Pennsylvania. Act May 2, 1905 (P. L. 352).

The work in the pit was very largely, if not entirely, done from the center or core by the use of the revolving crane, and it became necessary to wheel the supplies over the pit into and upon the solid center in one of two ways, known as the "front way" and the "back way." The way usually pursued was the "front way"; but, when that way became congested with materials, the foreman would direct laborers to wheel sand and other material by the "back way." In order to reach the "back way," or "back end" of the pit, the sand could be wheeled by the side of the pit in one of several ways. Along the side of the pit and not more than two feet from it ran a tramway. Between the unguarded edge of the pit and the first rail or extended ties of the tramway there was a narrow irregular space of from six inches to two feet in width, and between this rail of the tramway and the side of the building there was room sufficient to wheel several barrows abreast, away from any peril or danger of the pit.

The testimony showed that Duke for years had worked in various capacities in and about this pit, working in it at times and passing over it at times and around it nearly all the time, and that he had intimate knowledge of its unguarded condition. On the day before the injury, the foreman had instructed a laborer by the name of Sitler to wheel a barrow of sand to the crane by the "back way." Without further direction it appears that Sitler took his own route and wheeled a barrow of sand along the edge of the pit in the narrow way of from six inches to two feet wide between the edge of the pit and the first rail or ties of the tramway, and that Duke saw him. Upon the day of the injury it appears that Duke was directed by the foreman to wheel sand over the pit to the crane, and that he told Duke to "go and wheel the sand in and take it in around the back way, the way Sitler took it yesterday." What Duke did in response to this command appears by his own testimony, as follows:

"Mr. Bower told me to wheel this sand in there, and I came in by the back way of Mr. Sitler that I had saw him come in the day before, and I wheeled the sand down along this track and the edge of this wall—about two feet of space and across the plank—there was a plank across this pit, I had three plank laid across this pit, in this hole, to the inside of this core, to dump the same [sand] into a box. I only took one load and dumped it and went on out. I went across the planks and up the middle of the tracks with the wheelbarrow and then I came with the second load of sand, and when I was going along by No. 2 pit I stepped into a hole, I should judge about six or eight inches deep, between the edge of the pit and the track, and I stumbled and fell headlong into the pit."

An analysis of Duke's conduct discloses that of several ways to wheel his barrow to the "back end" Duke selected the narrow and dangerous way and avoided a broad and safe way; the two ways, the dangerous and the safe ways being separated one from the other in distance only by the breadth of a rail and the extended ties. That he saw the pit,

and therefore must have known that he was passing within a very few inches of its unguarded brink, is evidenced both by his admission and by the fact that he placed planks across it, over which he wheeled the barrow, and that he succeeded in making one trip in safety along this dangerous way. In returning he selected the safe way and passed between the tracks of the tram and away from the point of danger, but on his second attempt to wheel the barrow along the edge of the pit he stepped into a hole in the irregular surface of the ground upon or near the edge of the pit and fell or was thrown into it.

It was not denied by the defendant that the way traversed by Duke was permitted by it to become rough and to contain holes, in fact it was asserted by the defendant that the very nature of the work in the pit caused an uneven and broken surface about its rim; nor is there any dispute in the testimony that immediately adjoining this way, and separated from it only by the width of a rail, and possibly by the extended ties, there was an absolutely safe way for Duke to have traveled, the difference between safety and danger here being merely a matter of inches. In pursuing the safe way, however, and turning to cross to the pit and go upon the core, Duke would have been required to lift the wheel of his barrow over the rail of the tram. The inconvenience of this act he avoided by taking the dangerous way.

The direction of the foreman to Duke to wheel the sand by the "back way," or in the "back end," may be susceptible of two constructions and was given a greater importance by the trial court than is justified by either construction. It would seem by one construction that the direction of the foreman to Duke to wheel the sand in by the "back way," instead of by the "front way," which at the time was blocked, did not indicate the passageway along the brink of the pit, or the route which Duke should take to get there, but rather the way back of the pit, as distinguished from the way in front of it, as a place of entrance to the core of the pit, and in no sense restricted, but in every sense left to Duke's option and to Duke's senses, the route to the "back end" that seemed safe and free from danger. It would seem by the other construction, as disclosed by the court's instruction to the jury, that it was thought that the foreman's direction to Duke to wheel the sand in by the "back way, the way Sitler took it in yesterday," might be a direction which, if followed literally by Duke, relieved Duke of the assumption of risks of dangers that were obvious and discharged him from the responsibility of the consequences of his act of obedience. The court said:

"Was the place over which the plaintiff was *required* to move by wheelbarrow the sand in question reasonably safe? If it was dangerous, did the defendant have knowledge of its dangers and was the plaintiff ignorant of its dangerous condition? * * * The question for you is rather one as to whether the route taken by him was the one over which he was *expected* or *required* to take the sand. If it is true, as testified by the plaintiff, that he was instructed and directed by the defendant's foreman, Clark Bower, to use the route taken by him, the defendant is convicted of negligence in not having first made the same reasonably safe. If, however, on the contrary, you are satisfied that such were not his instructions, and there was another course open to him which was reasonably safe, the defendant should not be convicted of negligence."

From the terms of this instruction, the test of the defendant's liability and of the plaintiff's contributory negligence appears to be the construction which the jury is asked to place upon the foreman's order and the manner of the plaintiff's compliance with it, while under the evidence as we view it we think the test is the conduct of Duke, taken in connection with his admitted knowledge of the dangers of his undertaking, without regard to the foreman's order or the construction to be placed upon it.

If the injury to Duke had occurred upon his first trip along the dangerous way, we think this instruction of the court below would have been more in point, for then there would have been the question for the jury, "Was the plaintiff ignorant of its dangerous condition?" But having made the trip once, and having adjusted the boards across the pit and wheeled his barrow over them, having observed and testified to the narrowness of the way, his proximity to the edge of the pit, and having knowledge, either by sight or by the sensation of wheeling the barrow, of the roughness of the ground along the edge of the pit, and having sought and pursued a safe way upon his return, there could be left for the jury no question of the plaintiff's knowledge of the danger and condition of the unsafe way or of the existence of a nearby way that was perfectly safe. With this knowledge of the dangers and perils upon the brink of the pit, if not gathered by years of observation, certainly disclosed to him by his first trip, and with a safe way open and known to him and distant but a few inches from the unsafe way, Duke is not discharged from negligence consequent upon electing to take the dangerous way, even in compliance with what he thought was required of him by the foreman's order, when the way embraced within the instruction was obviously dangerous, and when the way adjacent to it was obviously safe.

In Solt v. Williamsport Radiator Co., 231 Pa. 585, 80 Atl. 1119, the Supreme Court of the state of Pennsylvania said:

"To do an obviously dangerous thing, which one is required to do in order to perform the duties of one's employment, is an assumption of a risk, but not necessarily contributory negligence."

We find nothing in this case, in the light of the foreman's instruction to Duke, when conjoined with Duke's knowledge of the situation, that *required* Duke to wheel the barrow of sand along the narrow and dangerous way, or that brings this case within the principle of law adverted to. Continuing the court said:

"To do an act necessary to the performance of the duties of one's employment in a way which is obviously dangerous, when one can perform the act in another way known to him which is obviously safe, is contributory negligence, which will bar a recovery, even though the employer may have been negligent in not complying with the requirements of the statute. * * * Where two ways of discharging the service are apparent to an employé, one dangerous and the other safe or reasonably so, the employé must select the latter, whether or not it is the less convenient to him; and if he chooses the former, and the danger is such that a reasonably prudent man would not incur the risk under the same circumstances, he is guilty of such negligence as will bar a recovery, although the master may also have been negligent." Baldwin v. Urner, 206 Pa. 459, 56 Atl. 38; Chisney v. Pipe Co., 199 Pa. 520, 49 Atl. 309; McIntire v. Steel Co., 208 Pa. 36, 57 Atl. 61; Musser v. Brown, 126 Fed. 141, 61 C. C. A. 207.

The negligence imputed to the defendant, that it failed to afford the plaintiff reasonably safe conditions under which to work, is based upon the contention that the foundry was not sufficiently lighted for Duke to become aware of his peril. Upon this point there was a conflict of testimony, which ceases to be important, in view of Duke's admissions and the necessary deductions from his conduct that he saw and knew the dangers incident to the way he selected and pursued.

[2] In reaching a conclusion in this case we recognize the correctness and propriety of the rule of law that a case should not be withdrawn from a jury where upon a given state of facts reasonable men might differ as to whether there was negligence or not. In such a case, negligence is a question of fact and being such is to be determined by the jury and not by the court; but where the facts are such that from them all reasonable men would draw the same conclusion, and that upon the testimony no recovery can be had upon any view which can be properly taken of it, then the question of negligence ceases to be one of fact for the jury, and becomes one of law for the court to determine. Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; Sealey v. Southern Ry. Co., 151 Fed. 739, 81 C. C. A. 282; Bush v. Hunt, 209 Fed. 164, 126 C. C. A. 112; Myers v. P. C. Co., 233 U. S. 184, 193, 34 Sup. Ct. 559, 58 L. Ed. 906.

In our opinion the conduct of Duke, in view of what he did, saw, and admitted to have known, amounts to misconduct, about which reasonable men cannot draw different conclusions, and we are of opinion that the court below committed error in refusing to find, as a matter of law, that Duke was chargeable with the negligence that caused his injury, and in failing to bind the jury to return a verdict for the defendant.

The judgment below is reversed, and a new venire is awarded.